Good morning, we have three cases to hear this morning. Judge Martin and I are very pleased to have our colleague from the district of Kansas, Judge Frattle, to assist us with our work this week. We're hoping that the two of us can behave well to convince her that visiting occasionally with an appellate court is a good thing to do. I'm going to be on my best behavior. I promise I will be, at least today. Senior district judges really do a great service to our country and to the federal judiciary and shouldering a large share of the workload of the federal judiciary, and we're very fortunate to have her assist us with our work this week. So counsel, if you haven't been here already this week, you should know that we're familiar with your cases. We've read your briefs, the authorities cited in your briefs, at least portions of the record, and so you should feel free in the limited time that is available to you to get straight to the heart of your argument. Please don't treat the red light as aspirational. When it shows, it's time to wrap it up. Of course, if you're answering a question from the court, you need to finish your answer and you'll be on our time, and it may be that we'll have additional questions we want to answer. So let's go ahead and get started. United States v. Johnson. Ms. Kim. May it please the court. One night, Officer Duvall saw Mr. Antonias Johnson and a woman walking in a street where there were no sidewalks. I know that street very well. I grew up in Mobile. Yes, Your Honor. So after he saw a car go around them, he stopped them both for their safety. They told the officer they were coming back from a 24-hour Walmart and they were walking back to their hotel, and the Walmart and the hotel were both just a few feet away from where they had been stopped. Officer Duvall was able to get their identification. He never believed they were dangerous, and although he only suspected them of just walking down the street, he handcuffed them and then he locked them in the back of separate patrol cars. Well, tell me this. Why wouldn't the officer have had probable cause to arrest your client for disorderly conduct? Under Alabama law, that offense is committed when someone obstructs vehicular or pedestrian traffic with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof. It seems to me by the description you provided just a moment ago, he would have had probable cause to make an arrest for that offense. Yes, Your Honor. I think that there were facts here where the officer had reasonable suspicion or probable cause to believe that they were blocking the traffic, but the problem here is that the officer, that Officer Duvall's actions after he stopped them were legal under the search incident to arrest exception, and that's the problem. This is not a search incident to arrest for several reasons. After Officer Duvall stopped them, he handcuffed them, he locked them in the back of a patrol car, but he testified that he didn't arrest them for disorderly conduct. He says, I detained them, and so at all times during this stop, he treated it as a terrorist stop, and based on everything that Officer Duvall said, there was no legal basis for the use of the handcuffs. There also was no legal basis for him to lock Mr. Johnson in the back of that patrol car. Well, whatever he thought subjectively is not really the question, is it? The determination of whether the officer could have done this, an objective determination, and if he had probable cause to make an arrest, I don't understand why he couldn't have done everything you just described. Well, we don't even have to go into what he was thinking subjectively. All you have to do is pay attention to what Officer Duvall said and the reasons why he stopped. That's subjective, though. That's what he was thinking, as opposed to what the objective facts show he would have been entitled to do. And under the law, when you're considering whether somebody was search incident to arrest or whether this is a terrorist stop, the court doesn't get into the officer's subjective beliefs. Right, I agree with that. So, if you look at the objective facts- So, it doesn't really matter what he said his intent was. And if you look at his testimony, he says, I stopped them for their safety, I never- You're going back to subjective facts, though, right? Well, Your Honor, if you allow me to continue, what he also says is, I never believed that they were dangerous, and he doesn't give any basis for using the handcuffs. He also, at the very end, he says, well, I have probable cause to arrest for disorderly conduct, but he does not arrest for disorderly conduct. He only arrests after he finds the firearm. And he did not arrest the young woman that was walking with Officer Johnson. She was not arrested for disorderly conduct. So, the arrest came after he found the firearm. The other problem with this is that for a search incident to arrest, there actually has to be an actual arrest, and that wasn't the case here. The Supreme Court has said that the authority to search incident to arrest arises at the moment of the actual arrest and not merely when there are grounds for arrest. So, in this case, Officer Duvall only had grounds for arrest. Also, the rationales for search incident to arrest weren't present at the time that he conducted the search. Under a search- Let me tell you what we've said in a case called United States versus Banshee. Are you familiar with that? I'm not, Your Honor. It's 91 F. 3rd, 99 at 102, 11th Circuit, 96, 1996. The arrest immediately followed the challenge search. The fact that the defendant was not under arrest at the time of the search does not render the search incident to arrest doctrine inapplicable. Right. And I believe a lot of that case- The fact that the arrest comes later doesn't really matter, is what we've said. Yes, Your Honor. And a lot of that case law is based on the Rawlings versus Kentucky case, which is out of the Supreme Court. And I think the reason why they upheld the arrest after the fact is because the facts are very different there. So, in the Supreme Court case in Rawlings, you have a person who immediately confesses to possessing drugs, and then right after the officer searches that person, finds a knife and money in their pocket, and then immediately arrests them. So, all of those actions happen very contemporaneously, but that wasn't the case with Mr. Johnson's case. He gets locked in the back of the patrol car. The officer takes his backpack. He searches the backpack. He says he then, after he finds the backpack, he calls back to the station, and then he has a superior tell him that he needs to bring Mr. Johnson back into the station. And so, then he's formally arrested. I think that's very different from someone who is stopped by police, confesses to a crime, and then there's a search and an immediate formal arrest right after that. So, I think our case is different than in those cases where you have someone who is searched first and then immediately arrested. Any questions? I was just curious about what happened to the woman with Mr. Johnson. She was allowed to walk away. So, she was never arrested for disorderly conduct. The only person that was arrested was Mr. Johnson, and he was only arrested after the police officer found the firearm. Thank you. Okay. Mr. Butler. Good morning. May it please the court. Steve Butler for the United States. If I may, I'd like to address some points that Ms. Kemp just raised to clarify the record on a number of matters. When was he, what's the government's position about when he was under arrest? Yes, and I appreciate the question because you do have to read the transcript a number of times and put that jigsaw puzzle together. The record is very clear that right at the same time as he was handcuffed outside the for the time the officer arrived until they're headed to the precinct, the officer put the cuffs to detain the defendant, and at that same time asking for consent to search the backpack, and after that placed him in the police car. The record is crystal clear on that. So, handcuffs, ask for consent to search, search, then arrest. Correct. It was in the formal arrest obviously occurred when the officer detected the gun in the backpack and was able to determine that that was an illegal stolen firearm. So it was one of these typical police situations that unfolds where the officer comes up on a scene and doesn't know exactly what's going to happen. Certainly he witnessed a disorderly conduct violation to address Judge Pryor's question. That was the avenue that Judge Steele traveled down on his suppression order. He could have also talked about the Terry Stott prong alternatively, but he chose to talk about the search incident to an arrest, and that was certainly enough for this court to affirm. But the officer was also responding to the suspicious person's call about burglaries going on about five or six blocks north on the other side of Dolphin Street. Did they ever find that person? Oh, I have no idea, Judge. I like to know the big picture. I was asking our AUSA a number of questions about things that weren't even on the record that I was curious about with this case, but I will say this and I do think it's pertinent to that point, is that there's nothing in the record to indicate that the officer's concern about the burglary, the car burglaries up at the nursing home were ever allayed. I think he just was distracted by what he confronted, you know, with the defendant there on the scene in the middle of the night. So that's the sequence, Judge Martin, on that. And it is absolutely true that Judge Steele, as a matter of law, could find that there was authority to search, authority to handcuff, of course, that's synonymous with an arrest, and to conduct a search incident to an arrest, which doesn't implicate the Fourth Amendment at all. And in fact, two cases that the defendant cited were examples of cases where the defendant was not actually under arrest, but was subject to the search incident to arrest analysis, and that was Leo and Lester. So their own cases support that notion. And also, I'd like to respond to one point that the officer never believed that these two folks were dangerous. There's nothing in the record to support that, and in fact, it supports the contrary. The police officer testified that he was concerned for his safety and for their safety, that's why he handcuffed them. He said I was outnumbered. Correct. Correct. In the middle of the night, firing on an area. But not that he found them threatening. That was my take on it. He just said there were two of them, one of me. I understand. My view, our position would be that the officer believed that that was very threatening. He was alone. Well, even if it doesn't support that, I thought the point you were trying to make earlier was there was nothing to support the notion that he did not consider them dangerous. That is correct, Your Honor. And I think the record, you know, on the flip side would support affirmatively that it was, but nothing to the contrary. What was the other case besides Leo that you just cited to us about the search coming after? Lester. Lester, okay. Yes, that was, I believe, an unpublished decision by this court. Okay. Right. So . . . Is Leo published? Leo is a published decision out of the Seventh Circuit. Oh, okay. Yes, it is. Okay. Thanks. And clearly, on the Terry stop, we've been talking about search incidents, but that's a legal case. It pertains to their argument about the Terry stop. But that's not how Judge Steele traveled in this case. So we ask that this court affirm Judge Steele's order, and I'm happy to answer any other questions. I just have a question. So when we're talking about a search incident to arrest, are you saying that it was a search incident to arrest for violating the disorderly conduct? Okay, I misunderstood what you said. I thought you were saying it was a search incident to arrest based on the search of the backpack. Right. No, I appreciate the question. No, clearly, Judge Steele found that there was probable cause to arrest for violating the state disorderly conduct statute, and the search incident to an arrest flowed from that violation. And then alternatively, that there was consent. Correct. And I'm going to say this, that that's the crux of this case, and that's going to splinter off to whether you're talking about probable cause to arrest or a Terry stop. You've got very, very strong consent. Of course, this court's well aware of the standard of review over Judge Steele's findings of fact. You'd have to find that he made clear error in finding that there was valid consent in this case. To me, there's no argument whatsoever that the consent was in any way brought about by the handcuffing. There's no coercion here. This court's authorities would point to the, would support our position on that. Okay, Mr. Butler, thank you. Ms. Kemp, you have a couple minutes for rebuttal. Ms. Kemp, he said there's no, you have no argument about the consent. I bet you do. I also refer the court to the second circuit case cited in our brief, which is Bailey. Mr. Johnson's consent was certainly tainted by the fact that he was handcuffed and detained before the police officer asked for that consent. And there's no attenuation between the time that Mr. Johnson is handcuffed and the time  As a matter of fact, he had already been handcuffed and he says, well, you know, do you mind if I search you before you go in the back of my patrol car because people leave stuff back there. And Mr. Johnson said, no, I do not. He takes the backpack and then Mr. Johnson is locked in the back of the car. Also, counsel made reference to the Lester case. I think the Lester case illustrates perfectly why this stop in this case violated the Fourth Amendment. In Lester, the facts in Lester are almost identical. Mr. Lester is walking down the street. The police officers stop him because he fits the description of a bolo for a robbery. And in that case, the officers allow Mr. Lester to wait outside of the police car without being handcuffed. And it's not until Mr. Lester becomes agitated and he starts to fight the officers that handcuffs are used. Ms. Kemp, let me ask you one question before you finish. You do not quarrel with this notion, do you, that if the officer had the authority to conduct a search incident to arrest, the officer could have searched the backpack? If he had the authority to search incident to arrest, he could have done a full search because the rationale... He could have searched the backpack as part of a search incident to arrest. Yes, Your Honor. Because the rationales for search incident to arrest are that you are searching to disarm the person before taking them into custody and you're trying to preserve evidence of the offense. But in this case, the offense is disorderly conduct and certainly... But, all right, that's what we're getting to. Okay. If the officer, though, had probable cause to make an arrest, he can conduct a search incident to arrest, can he not? After he makes the arrest. In U.S. v. Robinson, it says that the authority arises at the moment of actual arrest, not primarily when you have grounds for the arrest. Okay. The only thing that I would add, Your Honor, is that the problem with this case is that anytime a person is stopped, regardless of the nature and circumstances of the offense or the person's behavior during the stop, it allows the police to be able to use the most intrusive means to conduct the stop, and I think that's a problem. Do you have any questions? That's a good argument. Thank you. Both sides. Thank you. So, Yarborough v. Decatur Housing Authority.